## GETZ et al. v. EDINBURG CONSOL. INDEPENDENT SCHOOL DIST.

### No. 8839.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1939.

Rehearing Denied March 10, 1939.

A. B. Huguenin, of Dallas, Tex., and Vernon B. Hill, of Mission, Tex., for appellants.

W. L. Matthews, of San Antonio, Tex., James R. Norvell, of Edinburg, Tex., and Thomas E. Elcock,· of Wichita, Kan., for appellee.

Before FOSTER, HOLMES, and Mc-CORD, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from an interlocutory decree approving a composition offered by Edinburg Consolidated Independent School District, hereafter referred to as petitioner, under the provisions of chapter 10 of the National Bankruptcy Act, added by the Act of August 16, 1937, 11 U.S.C.A. § 401 et seq. The evidence is not brought up in the record. However, the district court found the facts in great detail and these findings are not challenged by appellants.

The facts material to the consideration of this appeal are as follows. Petitioner is a public school district which existed before 1915 and was incorporated in its present form by special act of the Texas legislature, Chapter 3, Special Laws, approved September 23, 1926. The district covers some 595,000 acres of land in Hidalgo County. The Act of 1926 authorizes the district to assess property in that area and levy taxes, not exceeding $1.50 on each $100 of the assessed value. It has outstanding bonds, which with accrued interest, amount to $3,131,000. There are several overlapping taxing districts covering the same territory. The total bonded indebtedness covering the property in the district is $11,748,950. Petitioner's bonds were issued serially from 1915 to 1927 to mature, in various proportions, at stated dates up to 1958 inclusive. The bonds issued from 1915 to 1925, inclusive, provide for 5% annual interest. Those issued in 1926 and 1927 provide for 6% annual interest, from 1927 to 1937, inclusive, the district levied taxes at the full rate of $1.50 per $100 of assessed valuation and divided this in different proportions between the sinking fund for the bonds and the fund for maintenance of the schools. From 1931 to 1937 the assessed value of property in the district as fixed by petitioner dropped from $12,051,000 to $6,199,000. For the years 1932 to 1937 the percentage of taxes collected was as follows: 1932, 26%; 1933, 30%; 1934, 42%; 1935, 52%; 1936, 50%; 1937, 51%. Petitioner brought no suits for the collection of delinquent taxes after the year 1933. The outstanding bonds are in default $120,000 in principal and $820,000 in interest. Default began in 1932. Since April 10, 1932, petitioner has paid in interest and into the sinking fund $240,875.-50, about 21% of the amount of interest that has accrued after that date. A number of suits were filed against the district by bondholders and judgments were recovered. Payment of some of these judg-ments was secured by mandamus proceedings. Other suits are threatened and petitioner is being harassed by creditors.

The plan of composition, omitting unimportant details, provides as follows: for an issue of refunding bonds, maturing in 40 years, to be exchanged par for par for the outstanding bonds with accrued interest. The refunding bonds to bear 1% annual interest for the first ten years, 2% interest for the next ten years, 3% for the next ten years and 5% for the last ten years; for the transfer to the court of the sinking fund on hand, this, after paying costs, etc., with the addition of collections of delinquent taxes, to go 50% to equalize equitably interest on overdue interest coupons, in consideration of some bondholders having secured payment through suit, the other 50% to go to the fund for the maintenance of the schools. The plan for this to be worked out by the interested parties and approved by the court. By an amendment to the original plan, made before final approval, petitioner bound itself to levy a tax of not less than 75 cents on each $100 of assessed value of taxable property within the district for the purpose of paying interest and providing a sinking fund for the retirement of the bonds. Further, the amendment granted the right to any bondholder to bring and maintain suit to require the performance of its legal duty by petitioner in respect of assessment of property for taxation and the levy and collection of taxes, the same as such bondholders could under the law bring and maintain if petitioner was in default in the payment of interest or not providing a sinking fund. This provision to be written into the refunding bonds. The amended plan has been accepted by 74.7% of the bondholders affected. Appellants hold less than 10% of the outstanding bonds.

The District Court concluded, as a matter of law, that petitioner is insolvent and unable to meet its obligations and therefore entitled to the relief prayed for; that the plan of composition offered is fair, equitable, for the best interests of the creditors affected and does not discriminate unfairly in favor of any creditor or class of creditors; that the offer of petitioner and acceptance of the plan were in good faith; and that petitioner is authorized by law to take any action necessary to carry out the plan.

Appellants contend the Bankruptcy Court is without power to diminish or to

take away the bondholders' rights and the taxing power of the petitioner; that it would violate the contract between the bondholders and petitioner; that the plan is unfair and unequitable and not for the best interests of the creditors in that it provides no certain means and method whereby objecting creditors may receive payment of matured interest on their old obligations to the same extent as other creditors have received it; that petitioner is not in good faith and does not come into court with clean hands because it has not assessed property for the purposes of taxation at its full, true value, as prescribed by law; and that it has not used diligence in collecting delinquent taxes.

It appears the State of Texas by Act of the Legislature, Ch. 107, Sec. 1, 1935, Vernon's Ann.Civ.St.Tex. art. 1024a, expressly authorized municipalities, political subdivisions and taxing districts of the state to proceed under laws enacted by Congress under the Bankruptcy power. The provisions of Chapter 10 of the Bankruptcy Act were held valid in U. S. v. Bekins, and Lindsay-Strathmore, etc. v. Bekins, 304 U. S. 27, 58 S.Ct. 811, 82 L.Ed. 1137. It also appears from the record that the state of Texas, through her Attorney General, intervened in the proceedings and raised the point that the suit was against the state. This was decided adversely to his contentions and the state has not appealed.

It may be conceded that the plan of composition impairs the obligation of the contract under which the bonds were issued but that is brought about by the agreement of the majority of the creditors and not by the arbitrary action of the court. It may also be conceded that in the past petitioner has apparently been delinquent in its duty in assessing property and taking steps to collect taxes. Bankruptcy usually results from mismanagement. That does not prevent the acceptance of a composition, with the approval of the court, nor an ultimate discharge. With such a heavy burden of indebtedness resting on the property of the district it is probable the officers of petitioner did the best they could in the circumstances. At any rate it is not shown that they were wilfully derelict. The purpose of the Bankruptcy Act as expressed in chapter 10 is to permit the scaling down of municipal securities, on the theory that half a loaf is better than no bread. Some of the bondholders may be dissatisfied with the bargain but under the provisions of the law they are bound by the action of the majority. The case presents practical business problems to be decided on equitable grounds rather than legal technicalities. On the whole we must conclude, as did the District Court, that the plan does not prevent the district from applying more than 50% of the maximum tax to the retirement of the bonds. The primary purpose of creating petitioner was to afford public school facilities for the education of the children living in the district. Necessarily, some part of the taxes must go to the operation and maintenance of the schools. It was never contemplated that all the taxes should go to the creation of a sinking fund for the ultimate retirement of the bonds and to pay current interest. Petitioner has ample authority to carry out the plan. If it wilfully does not do so in a fair and equitable manner the right to bring suit will be available to any bondholder to compel compliance.

The record presents no reversible error. The interlocutory decree approving the plan is affirmed.